IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| ACCEPTANCE INDEMNITY INSURANCE COMPANY, | § § § | |
| *Plaintiff*, | § § | Civil Action No. 1:06CV0257 |
| v. | § § | JUDGE RON CLARK |
| SHARON PENNINGTON, ERIN WAYNE PENNINGTON AND KURT BENSON | § § § § | |
| *Defendants*. | | |

**MEMORANDUM AND OPINION ON
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the court is Acceptance Indemnity Insurance Company's ("Acceptance") Motion for Summary Judgment [Doc. # 26].  This suit arises out of a car accident involving Kurt Benson and Sharon and Erin Pennington (collectively "Penningtons").  Acceptance insures Benson's former employer, Silsbee Motor Company ("SMC"), and argues that Benson, a car salesman for SMC when the accident occurred, was not covered by SMC's insurance policy, and so it owes no legal obligations to either Benson or the Penningtons.  The accident occurred at a casino in Vinton, Louisiana, 50 miles away from Benson's work and after work hours.  In response, the Penningtons argue that Benson was an insured at the time of the accident because he had permission to use SMC's vehicles for personal use.

Even though the movant is Plaintiff in this declaratory judgement action, Defendants bear the burden of proving, under Texas law, that coverage existed at the time of the accident.  The Penningtons have not presented any evidence to show that Benson was a permissive user at the

1

time of the accident and that SMC's policy covered Benson.  Benson did not respond to this

motion at all.[1]  The court concludes that summary judgment is proper as to all Defendants.

## I. Factual and Procedural Background

The uncontested facts of the accident are set out in the State of Louisiana Uniform Motor

Vehicle Traffic Crash Report.  *See* Penningtons' Response, Ex. B. On July 1, 2003, Benson drove

a car belonging to SMC to Delta Downs Racetrack and Casino in Vinton, Louisiana.   This is

approximately 50 miles from Silsbee, Texas, the location of SMC.  After remaining in the casino for

two hours, Benson drove the car into Sharon Pennington in the parking lot of the casino in front of

her husband, Erin Pennington, and then left the scene of the accident.

As a result of this accident, the Penningtons filed a personal injury suit against Benson and

SMC in the 356th Judicial District Court of Hardin County, Texas.   In that suit, the Penningtons

claimed negligence and negligence per se against Benson, and negligent entrustment of a vehicle and

liability under the doctrine of respondeat superior against SMC.  When Benson failed to appear, a

default judgment of $7,735,946 was entered against Benson in favor of the Penningtons.  After an

initial mistrial against SMC, the parties settled the state court suit as to SMC, and the default

judgment against Benson became final.

Acceptance, SMC's insurance company, filed a Declaratory Judgment action in this court

arguing that Benson used the car without permission and that SMC's policy does not extend

coverage to employees who use SMC's vehicles without permission.  This court initially stayed this

case pending a resolution of the state court proceedings.  *See* Order on Defendant's Motion to

---

[1]The Penningtons claim that Benson was never served in this case.  Plaintiff submitted proof that Benson was properly served, and so is a party to this lawsuit. S*ee* Pl's Reply Br., Ex. A.  Benson has not answered, but no motion for default has been filed.  *See* Fed. R. Civ. P. 55.

2

Dismiss, or in the Alternative, Motion to Stay [Doc. # 18].  Now that the state court judgment is

final, the only issue to be decided in this court is whether Benson was covered by SMC's insurance

Policy No. CG00019118 at the time of the accident.

## II. Standard of Review

The party moving for summary judgment under Fed. R. Civ. P. 56 has the initial burden of

demonstrating that there is no genuine issue as to any material fact and that it is entitled to judgment

as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514

(1986).  Movant may show that the undisputed material facts affirmatively establish a right to

judgment.  Alternatively, movant may establish that the other party has the burden of proof at trial,

and has failed to "make a showing sufficient to establish the existence of an element essential to [its]

case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2522 (1986).

In order to avoid summary judgment, the party opposing the motion must come forward with

competent summary judgment evidence of the existence of a genuine fact issue.  *See Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 106 S. Ct. 1348, 1335  (1986);

*Anderson*, 477 U.S. at 257, 106 S. Ct. at 2514.  The nonmoving party  "must do more than simply

show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586,

106 S. Ct. at 1356.   Fed. R. Civ.  P. 56 requires that the nonmoving party set forth specific facts

showing that there is a genuine issue for trial.  *Anderson,* 477 U.S. at 256, 106 S. Ct. at 2514.  Only

a genuine dispute over a material fact (a fact which might affect the outcome of the suit under the

governing substantive law) will preclude summary judgment.  *Anderson*,  477 U.S. at 248, 106 S.

Ct. at 2510.  The dispute is genuine if the evidence is such that a  reasonable jury could return a

verdict for the nonmoving party on the issue.  *Id.*  If the factual context renders a claim implausible

3

(for example if the claim simply makes no economic sense)  nonmovants "must come forward with more persuasive evidence to support their claim than would otherwise be necessary." *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356.

Fed. R. Civ. P. 56(c) requires the court to look at the full record, including the pleadings, depositions, answers to interrogatories, admissions, and affidavits.  All reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, and any doubt must be resolved in its favor. *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356.  However, only *reasonable* inferences in favor of the nonmoving party can be drawn from the evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 468, 112 S. Ct. 2072, 2083 (1992).

### III. Law and Analysis

The Penningtons chose to ignore Local Rule CV-56(b), which requires the nonmoving party to file a "Statement of Genuine Issues" specifically identifying the purported genuine issues of material fact.  The court, therefore, can assume that all of the facts listed in Acceptance's "Statement of Material Facts" are undisputed.  *See* L.R. CV-56(c).  The Penningtons will not be heard to complain that a key fact buried in the documents was not properly evaluated.

### A. Burden of Proof

"In a diversity action a federal court must apply the substantive law of the forum state, and the question of burden of proof is a matter of substantive law." *Ideal Mut. Ins. Co. v. Last Days Evangelical Ass'n, Inc.,* 783 F.2d 1234, 1240 (5th Cir. 1986); *see also* 10B Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2756 n.2 (3d ed. 1998 & 2007 Supp.).

In Texas, a party claiming that an individual is covered under an insurance policy bears

4

the burden to prove that the individual was in fact covered. *See Employers Casualty Co. v. Block*, 744 S.W.2d 940, 944 (Tex. 1988), *overruled on other grounds by State Farm Fire & Cas. Co. v. Gandy*, 924 S.W.2d 696, 714 (Tex. 1996); *Kirk v. Standard Life and Accident Ins. Co.*, 475 S.W. 2d 570, 572 (Tex. 1972). The fact that the case is brought as a declaratory judgment action does not change this burden. *See Pace Corp. v. Jackson*, 284 S.W.2d 340, 350-51 (Tex. 1955)(under Texas law, the burdens of proof in a declaratory judgment action brought by an insurer seeking a declaration of non-coverage are the same as they would be if the action had been brought against the insurance company by the person claiming the existence of coverage to enforce liability based on a claim under the policy).

At trial, the Penningtons will have the burden of proving that coverage existed and that Benson is an insured within the meaning of the policy. Acceptance argues that the policy language is clear and that the Penningtons have failed to show that there is at least a genuine issue of material fact as to whether Benson was covered by SMC's insurance policy at the time of the accident.

**B. Contract Interpretation**

Insurance policies are construed according to the rules governing contract construction. *Texas Farm Bureau Mut. Ins. Co. v. Sturrock*, 146 S.W. 3d 123, 126 (Tex. 2004). "In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Witkowski v. Brian, Fooshee and Yonge Properties*, 181 S.W.3d 824, 830 (Tex.App.–Austin, 2005, no pet.)(the court's objective "is to give effect to the intent expressed in that language by the persons or persons who wrote it . . . ."). Courts should consider the entire writing in an effort to

harmonize and give effect to all the provisions of the contract so that none will be rendered

meaningless.  *Coker*, 650 S.W.2d at 393.  The language in a contract is accorded its plain

meaning unless doing so would defeat the parties' intent.  *DeWitt County Elec. Co-op., Inc. v.*

*Parks*, 1 S.W.3d 96, 101 (Tex. 1999).

"Endorsements to a policy generally supersede and control over conflicting printed terms

within the main policy."  *TIG Ins. Co. v. San Antonio YMCA*, 172 S.W.3d 652, 658 (Tex.App.–

San Antonio, 2005, no pet.).  An endorsement, however, cannot be read apart from the main

policy, and the added provisions will only supersede the previous policy terms to the extent they

are truly in conflict.  *Id.*  "When terms are defined in an insurance policy, those definitions

control the interpretation of the policy."  *Id. citing Trinity Universal Ins. Co. v. Cowan*, 945 S.W.

2d 819, 823 (Tex. 1997).

## C. Penningtons' Arguments

The Penningtons argue that: (1) there is a genuine issue of material fact as to whether

Benson had permission to use the car at the time of the accident; and (2) the Garage Coverage

Master Endorsement indicates that Benson was covered under the policy.

### Coverage under the Main Policy

The policy at issue states:

The following are "insureds" for covered "autos" . . . Anyone else while using *with your permission* a covered "auto" you own, hire or borrow . . . .

[The covered "autos" are owned private passenger autos and non-owned "autos" used in the name insured's garage business. The named insured is Alan Sanford d/b/a Silsbee Motor Company.]

The following are "insureds" for "garage operations" other than covered "autos": . . . Your partners (if you are a partnership), members (if you are a limited liability

6

company), "employees," directors or shareholders *but only while acting within the scope of their duties* . . .

"Garage operations" means the ownership, maintenance or use of locations for garage business and that portion of the roads, or other accesses that adjoin these locations . . . .

Policy No. CG00019118, Ex. A to Acceptance's Motion for Summary Judgment, p. 3, 13 [Doc. # 26, Attachment # 2, p. 4, 14 of 36] (emphasis added).

### 1. Garage Operations Clause

There is no question that Benson was not covered under the "garage operations" clause at the time of the accident. No reasonable juror could find, and the Penningtons do not even argue that, a 50 mile trip to enjoy the myriad pleasures of a race track and casino is part of the "garage operations," or within the scope of business, of SMC.

### 2. Permissive Use Clause

There is no real dispute over the definition of the term "permission." Both parties recognize that permission may be express or implied. *See Royal Indem. Co. v. H.E. Abbott & Sons, Inc.*, 399 S.W.2d 343, 345 (Tex. 1966). Express permission is that which is affirmatively stated, while implied permission may be inferred from conduct between the parties in which there is acquiescence or lack of objection signifying consent. *Id*; *Jamar v. Patterson*, 910 S.W.2d 118, 121 (Tex.App.– Houston [14th Dist.] 1995, writ denied). Implied permission usually is shown by the interaction between the parties over time, including any prior usage. *Royal Indem. Co.* 399 S.W. 2d at 345.

In deciding whether an employee exceeded the scope of any express permission, Texas courts consider whether an employee was acting within the scope of his employment at the time

of an accident.  *See Coronado v. Employers' Nat. Ins. Co.*, 596 S.W.2d 502, 504-5 (Tex. 1980).

Texas adheres to the "minor deviation rule."  *Id.* at 505.  "Under this rule, the court must

determine in each instance – taking into account the extent of the deviation in actual distance or

time, the purposes for which the vehicle was given, and other factors – whether the deviation was

'minor' or 'material.'"  *Id.* at 504.

### a. Express Permission

It is undisputed that the vehicle belonged to SMC and that Benson was not using it for

business purposes at the time of the accident.  SMC had a strict policy of not allowing employees

to use vehicles for personal use without express permission from the principals at SMC.[2]  The

evidence before the court is that at some point after he left work on July 1, 2003, Benson took a

car from SMC's lot and drove 50 miles to a casino and racetrack in Vinton, Louisiana.  There is

nothing to suggest that anyone at SMC gave Benson express permission to use the vehicle for

personal use that night.

The Penningtons refer to the fact that Benson had an insurance card from SMC.  This

card was not submitted into evidence.  While the Penningtons characterize this card as

"unrestricted," there is no evidence to support this claim, and in fact Mr. Sanford testified that

Benson's card was a generic, unnamed employee insurance card limited to allowing the

employees to take customers on test drives.  *See*  Depo. of Alan Sanford, Ex. D to the

---

[2]The evidence submitted *by the Penningtons* confirms that Benson was never given such permission.  *See* Depo. of Alan Sanford, Ex. D to the Penningtons' Response, p. 50 ("Because we had conveyed to everyone that – that the only drivers insured for personal after-hours use was ourselves [Mr. Sanford, Mr. Hill, and Mr. Hardy] and our three wives."); Depo. of Hardy, Ex. C to the Penningtons' Response, pp. 17-18 ("Q: Has anyone ever, in the history of your company, except for the people I just named [Mr. Sanford, Mr. Hill, and Mr. Hardy and their spouses] used a Silsbee Motor Company vehicle for personal reasons? A: No, sir.").

Penningtons' Response, p. 50-52.  Even if Benson was given express permission to take customers on test drives, there is nothing to suggest that his trip to the casino, alone and after work, was only a "minor" deviation from his work as a car salesman.  There is no evidence that, at the time of the accident, Benson's trip to the casino was within the scope of any express permission to drive a covered "auto" for work related business, and could be covered under the policy.

        *b. Implied Permission*

The Penningtons make the conclusory statement that "there is evidence from which a reasonable juror could infer that Benson did in fact have at least implied permission to use the vehicle," but do not cite any evidence for this proposition.  There is no evidence that anyone at SMC knew that Benson ever took a vehicle for personal use, nor that Benson had actually used a vehicle for personal use in the past.  In fact, there is no evidence that any employee ever used, or had permission to use, an SMC vehicle for personal use.

The Penningtons assert that the court should ignore Benson's affidavit as biased.  In fact, the court has not relied upon Benson's affidavit in reaching any conclusion in this case.  More importantly, the Penningtons' argument misses the point.  Regardless of the weight given to Benson's affidavit, the Penningtons bear the burden to point to some evidence that raises an issue of fact about implied permission.

Acceptance filed its motion in February 2007.  This court gave the Penningtons a first extension until April 20, 2007, and then a second extension to May 8, 2007, to submit any additional evidence for consideration.  *See* Docs. # 29 and 33.  Despite these extensions of time, no additional evidence supporting the Penningtons' claims that Benson was covered under the

insurance policy was submitted.  There is nothing before the court to suggest that any additional time would result in relevant evidence being submitted, and the Penningtons have not identified any specific piece of evidence that they needed more time to obtain.

**Garage Coverage Master Endorsement**

The Garage Coverage Master Endorsement ("Endorsement") states:

**THIS ENDORSEMENT RESTRICTS YOUR POLICY . . .**

**I. Furnished Auto Exclusion – Dealers Only**

We will not pay for "bodily injury," "property damage" or "loss" arising out of the use of any covered "auto" owned by you and "furnished or available for regular use" of owners, partners, officers, employees, spouses, children or relatives of yours or any other person. "Furnished or available for regular use" means the right to frequent use of an "auto" for purposes that are not necessary or incidental to "garage operations."  This exclusion does not apply to the persons named in the Schedule of Drivers Furnished "Autos" . . . .

Kurt Benson is listed on the Schedule of Drivers Furnished "Autos."

The court must interpret the terms of the contract in an attempt to further the contracting parties' intent.  With regard to a policy endorsement, the court must be "particularly wary of isolating individual words, phrases or clauses and reading them out of the context of the [policy] as a whole." *See Lubbock County Hosp. District v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 143 F.3d 239, 245 (5th Cir. 1998).  The purpose of an exclusion is to take something out of coverage that otherwise would have been included within coverage; not to create additional coverage.  *See Liberty Mut. Ins. Co. v. American Emp. Ins.* Co., 556 S.W.2d 242, 245 (Tex. 1977).

The Endorsement does not broaden the definition of "insured" or supply any affirmative grant of coverage.  The Endorsement also does not suggest that the basic limitations of coverage in the policy are somehow void or should be ignored, nor does the Endorsement explicitly

conflict with, or supercede, the definitions in the policy.  Moreover, it is specifically labeled a coverage exclusion and not a coverage grant.  Specifically, the clause excludes coverage for drivers using the vehicle "for purposes that are not necessary or incidental to 'garage operations.'" There is no evidence that a trip to the casino and race track for Benson's delectation is part of "garage operations."

The Penningtons reading of the policy would mean that everyone listed in the Schedule of Drivers could drive the autos for any reason, at any time, and would be covered under the policy. In effect, the "exclusion" would negate all of the provisions of the main policy.  The court cannot conclude that this was the intent of the contracting parties.  This Endorsement does not create coverage for Benson.

**B. Benson**

 Benson did not respond to Acceptance's motion.  When no response to a summary judgment motion is filed, the court may accept as undisputed the movant's version of the facts and grant summary judgment when a prima facie case for entitlement is made.  *Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).  Further, the Local Rules of the Eastern District of Texas explicitly state, "[i]n the event a party fails to oppose a motion ... the Court will assume that the party has no opposition."  Local Rule CV-7(d).

Here, as noted above, there is no evidence to suggest that Benson had permission to use a vehicle from SMC at the time of accident.  In fact, the only evidence before the court shows that Benson did not have permission to use the vehicle from SMC at the time of the accident.  The court concludes that summary judgment is proper as to Benson.

11

## IV. Conclusion

Even though this is a declaratory judgment action, under Texas law, the Defendants bear the burden to show that coverage existed.  Benson did not respond to this motion, and the Penningtons did not come forward with any evidence which shows that Benson was a permissive user at the time of the accident.  While the Penningtons attempt to discredit Acceptance's evidence, this still does not show that Benson actually had permission to drive a company vehicle more than fifty miles for an evening's amusement at a casino and race track.  Because there is no evidence to suggest that Benson was insured under SMC's policy at the time of accident, summary judgment is proper.

IT IS THEREFORE ORDERED that Acceptance Indemnity Insurance Company's Motion for Summary Judgment [**Doc. # 26**] is **GRANTED**.  Because there are no other remaining claims, a final judgment will be entered by separate order.

So **ORDERED** and **SIGNED** this **18** day of **May, 2007.**

_____
Ron Clark, United States District Judge